2008 VT 72

**STATE of Vermont v. Aaron J. RITTER**

[956 A.2d 1141]

No. 06-173

¶ 1. June 10, 2008. Defendant Aaron Ritter appeals from an order of the Bennington District Court granting the State's motion to compel him to submit to DNA sampling. Defendant contends, first, that the DNA sampling statute violates the Vermont Constitution, and second, that he was denied his right to counsel at the hearing on the State's motion to compel DNA sampling. We affirm.

¶ 2. Defendant's first appeal issue, that the DNA-sampling statute violates the Vermont Constitution, is disposed of by our recent decision in *State v. Martin*, 2008 VT 53, 184 Vt. 23, 955 A.2d 1144. In that opinion, we found no constitutional infirmity, under Article 11 of the Vermont Constitution, in the compulsory collection of DNA samples from persons convicted of nonviolent felonies. *Id.* ¶ 35. As we noted in that opinion, its logic applies, a fortiori, to persons who have been convicted of violent offenses. *Id.* ¶ 7 n.3. Defendant's conviction is for first-degree aggravated domestic assault, 13 V.S.A. § 1043(a)(3), which is a violent offense under the DNA-sampling statute then in effect. See 20 V.S.A. §§ 1933(a)(1), 1932(12)(I). For the reasons stated in *Martin*, the compulsory DNA sampling of persons convicted of a violent crime, as defined in 20 V.S.A. § 1932(12), does not violate Article 11.

¶ 3. Defendant's second contention on appeal is that he was denied his right to counsel at the hearing on the State's motion to compel DNA sampling. See 20 V.S.A. § 1935. He contends on appeal that the Vermont Public Defender Act, 13 V.S.A. §§ 5201-5277, mandates that counsel be provided for him at state expense to contest the mandatory taking of a DNA sample.

¶ 4. Although we have never squarely confronted precisely this argument before, it is not difficult to resolve. We have concluded that the constitutional right to counsel, created by the Sixth Amendment to the United States Constitution and Chapter I, Article 10 of the Vermont Constitution, does not attach at a hearing to determine whether a nontestimonial identification order (NTO) compelling a blood sample would issue. *State v. Howe*, 136 Vt. 53, 63-64, 386 A.2d 1125, 1131 (1978) (holding that because "procedures seeking authority for . . . taking [of blood sample, fingerprints, and dental impressions]" are not "critical stage" of criminal proceeding, constitutional right to counsel does not attach). Defendant contends, however, that it was his *statutory* right, not his constitutional right, that was violated by the court's refusal to appoint him counsel for the sampling hearing.

¶ 5. We have held, albeit without prolonged analysis, that the Public Defender Act does not vest defendants with the right to counsel at the execution of an NTO to collect a blood sample. *State v. Marallo*, 175 Vt. 469, 470, 817 A.2d 1271, 1272-73 (2002) (mem.). There, we cited *Howe* and *United States v. Wade*, 388 U.S. 218, 227-28 (1967), for the proposition that the execution of an NTO was not a "critical stage" of a criminal proceeding. *Marallo*, 175 Vt. at 470, 817 A.2d at 1272-73.

¶ 6. Although this case is not directly controlled by *Marallo* or *Wade*, we see nothing to compel a different outcome under these minimally different facts. Like the NTO hearing in *Marallo*, the DNA-sampling hearing here raised at most a " 'minimal risk that . . . counsel's absence . . . might derogate from [the] right to a fair trial.' " *Marallo*, 175 Vt. at 470, 817 A.2d at 1273 (quoting *Wade*, 388 U.S. at 228). We noted in *Marallo* that, "[r]egardless of whether counsel was present, [the NTO] would have issued and the sample would have been taken." *Id.* So it is here. The only challenges defendant might have raised at the sampling-compulsion hearing were that he had not been convicted of a designated crime, see 20 V.S.A. § 1935(c), (d), or that the DNA-database statutes are constitutionally infirm. See *State v. Wigg*, 2007 VT 48, ¶ 5 n.3, 181 Vt. 639, 928 A.2d 494 (mem.). Regardless of the presence or absence of counsel, both challenges would ultimately have failed.

¶ 7. The plain terms of the Public Defender Act also support the conclusion that defendant's right to counsel was not violated. The Act mandates that a person, like defendant, who is entitled to services

under 13 V.S.A. § 5231, is entitled "[t]o be represented in any other postconviction proceeding which may have more than a minimal effect on the length or conditions of detention." *Id.* § 5233(a)(3). The proceeding under § 1935 has no impact on the length of detention, and its only possible impact on the conditions of detention is the minimal intrusion of having a DNA sample taken by buccal swab. See *Martin*, 2008 VT 53, ¶ 23; *In re R.H.*, 171 Vt. 227, 238, 762 A.2d 1239, 1247 (2000). Neither suffices to bring the hearing on DNA sampling within the purview of the Public Defender Act.

¶ 8. There being no violation of the Constitution or the Public Defender Act, we find no error in the trial court's order denying defendant replacement counsel.

*Affirmed.*

¶ 9. **Johnson, J.,** dissenting in part. Because I believe the state DNA-sampling statute violates the Vermont Constitution, I respectfully dissent. While I recognize that this case differs from *State v. Martin* to the extent that defendant here is a violent offender, my analysis in dissent to *Martin* applies nonetheless. 2008 VT 53, ¶ 36, 184 Vt. 23, 955 A.2d 1144 (Johnson, J., dissenting). Like the DNA sampling of nonviolent felons, DNA sampling of violent felons without individualized suspicion or a warrant violates Article 11 of the Vermont Constitution. To overcome this constitutional infirmity, even with respect to violent offenders, it is necessary for the State to satisfy the first prong of the special-needs analysis — whether there is a special need beyond normal law-enforcement needs. See *id.* ¶¶ 41-42. The analysis is identical regardless of the type of crime committed by the felon. Thus, it is unnecessary to discuss the distinctions between violent and nonviolent offenders that might militate in favor of sampling violent offenders under the second prong of the test — whether the State's special need outweighs the

individuals' privacy interests. As I argued in *Martin*, the State cannot make a credible argument that there is a special need to collect DNA from all felons beyond general crime control, and thus the second prong of the analysis is not triggered. *Id.* ¶¶ 45-54.

¶ 10. With regard to the second issue, defendant did not raise the right to counsel as a constitutional matter, and therefore I would not reach that issue. I agree with the majority, however, that defendant did not have a statutory right to appointed counsel under the Public Defender Act.