NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 87

No. 2016-335

| | |
|---|---|
| Brandy Clayton | Supreme Court |
| | |
| | On Appeal from |
| v. | Commissioner of Labor |
| | |
| J.C. Penney Corporation | June Term, 2017 |

Anne M. Noonan, Commissioner

David L. Grayck of Law Office of David L. Grayck, Montpelier, for Plaintiff-Appellee.

Wesley M. Lawrence of Theriault & Joslin, P.C., Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** J.C. Penney Corporation (employer) seeks interlocutory review of the Commissioner of the Department of Labor's denial of its motion for summary judgment in this workers' compensation matter. Specifically, employer argues that the Commissioner lacked authority to invalidate an approved settlement agreement that the parties entered into pursuant to a previous claim. We reverse and remand.

¶ 2. At the start, a brief overview of the relevant provisions of Vermont's Workers' Compensation Act, codified at 21 V.S.A. §§ 601-711, will place employer's arguments in context. A claim for compensation for a workplace injury is initiated by filing a notice of injury with the employer. Id. § 656(a). After a review of the claim, the employer may deny the claim with notice

in writing to the claimant and the Commissioner, and the claimant may request a hearing. Id. § 662(b). When the employer does not deny the claim, but the claimant and the employer are unable to resolve it, either party may request that the Commissioner hold a hearing pursuant to 21 V.S.A. § 663.

¶ 3. If the claimant and the employer settle the claim without a hearing, the parties' settlement agreement must be filed with the Department of Labor for review as follows:

> The Commissioner shall approve such an agreement only when the terms thereof conform to the provisions of this chapter. However, a compromise agreement may be approved by the Commissioner when he or she is clearly of the opinion that the best interests of such employee or such dependents will be served thereby.

Id. § 662(a). Once approved by the Commissioner, a settlement between a claimant and an employer is enforceable, though still subject to modification in two specific circumstances, neither of which is relevant here. See id. §§ 668, 675.

¶ 4. In addition to the authority described above, the version of Workers' Compensation and Occupational Disease Rule 17 effective at the time of the settlement agreement at issue here provides that, in reference to the forms used to satisfy the requirements of the settlement procedures found in § 662(a): "Once executed by the parties and approved by the Division, these forms shall become binding agreements and absent evidence of fraud or material mistake of fact the parties shall be deemed to have waived their right to contest the material portions thereof." Workers' Compensation and Occupational Disease Rules, Rule 17.0000 Compensation Agreements, Code of Vt. Rules 24 010 003 (Apr. 2007) [hereinafter Rule 17]. In addition, Rule 17.6000 addresses the form used for full and final settlement agreements and stipulates that "[o]nce executed by the parties and approved by the commissioner, this form shall relieve the employer of all further liability for compensation benefits related to the injury." Id.

¶ 5.    We now turn to the facts.  Brandy Clayton (claimant) has worked for employer for several years as a hair stylist.  In February 2011, she filed a workers' compensation claim for heel and arch pain in her left foot after suffering a work-related injury in March 2010 described as a result of standing all day on the job.  Employer accepted the claim as compensable.

¶ 6.    While this February 2011 claim was pending, claimant sought medical attention from a podiatrist.  In October 2013, claimant reported to the podiatrist that she was suffering from both left and right foot pain; the podiatrist diagnosed claimant with right foot plantar fasciitis in addition to his diagnoses pertaining to her left foot.  On the same date, the podiatrist documented in claimant's medical record that claimant's "bilateral foot pain" likely resulted from standing all day at work and that this "work environment definitely plays a role" in the development of fasciitis. The podiatrist again noted the bilateral foot problems after two subsequent appointments with claimant in December 2013 and February 2014.  In June 2014, claimant participated in an independent medical exam with a physician who noted that claimant had been having issues with both her left and right feet.

¶ 7.    On September 14, 2014, the parties filed a "Modified Full and Final Form 16 Settlement Agreement with Addendum."  The first page of the parties' agreement states that claimant

> alleges a work injury occurred on or about March 26, 2010 and any other date while worker was employed by JC Penney Co. or as a result of any injury allegedly incurred while worker was employed by JC Penney Co. allegedly causing the following injuries: left foot; and any other injury or condition or symptom or body part and any and all sequelae resulting in alleged temporary and/or permanent disabilities and/or medical treatment beginning on March 26, 2010.

Under the terms of the agreement, claimant received a lump sum payment "in full and final settlement of all claims for any and all benefits, injuries, diseases, illnesses, conditions, and/or

3

symptoms and any and all sequelae allegedly sustained as a result of" her March workplace injury. The agreement included a clause stating that it was "intended to be a general release of all claims of the employee against the employer and the insurance carrier arising from employee's employment with employer." The addendum that accompanied the parties' agreement also included language releasing employer from "any and all actions . . . on account of any liability, matter, cause, transaction, occurrence, incident or thing having any connection whatsoever with [claimant's] alleged injuries of March 26, 2010, or any other date" as well as a statement that claimant intended "this provision to be all-encompassing and to act as a full and total release of any and all such claims [she] may have against . . . [e]mployer . . . whether or not specifically referred to herein, notwithstanding that the matter and damage may be continuing or undiscovered at [the] time." The addendum concluded with claimant's acknowledgement of her right to seek representation, her choice to remain unrepresented by counsel, and her understanding of the settlement agreement's terms.

¶ 8. Pursuant to the approval process, a Department hearing officer, appointed by the Commissioner, sent claimant a letter on September 16, 2014, advising her that approval of the settlement required a finding that it was in her best interests. The hearing officer noted claimant's "foot pain" resulting from her work activities, and advised claimant that:

> [I]t is particularly important for you to understand what a full and final settlement really means. It means that if you get worse in the future and need to see a doctor, or if you can't work because of your injuries or even have to search for a less strenuous job, you will not be entitled to any workers' compensation assistance. I need to know that you completely understand this.

The hearing officer instructed claimant to sign and date the letter to indicate her understanding of the settlement agreement if, after reading the letter, she still wished to settle her claim. On September 17, 2014, claimant signed the letter, and by doing so, acknowledged, "I have read the

above explanation of the terms of my proposed settlement agreement. I understand that once the agreement is approved, I will relinquish my right to all future workers' compensation benefits causally related to my February 5, 2013 work injury."[1] On September 24, 2014, the hearing officer approved claimant and employer's settlement agreement in writing.

¶ 9. On March 17, 2015, approximately six months after the settlement was approved, claimant filed a new notice of injury, this time alleging a March 10, 2015 injury to her right foot. Employer filed a form denial on March 26, 2015, stating that claimant's new, right-foot claim was denied as a preexisting condition and unrelated to employment. Employer also filed a letter with the Department, arguing that the claim should be dismissed for two reasons: first, that it was barred by the prior settlement agreement; and second, because the right-foot claim was reasonably discoverable and apparent at the time the settlement agreement was executed. Claimant appealed employer's denial of her claim.

¶ 10. A workers' compensation specialist found employer's denial "reasonably supported," but also that the legal effect of the purported general release language in the settlement agreement needed to be addressed at a formal hearing. With the hearing officer's permission, employer filed a motion for summary judgment and claimant filed a cross-motion for summary judgment. The sole issue before the Commissioner was whether the parties' September 2014 settlement agreement barred claimant's second claim for workers' compensation benefits—that is, whether the settlement agreement barred claims related only to the 2010 injury to claimant's left foot and sequelae of that injury or whether the agreement also barred any other injury claims pre-

---

[1] The heading in the letter from the hearing officer indicates a date of injury of March 26, 2010, which is consistent with the settlement agreement. Because there is no explanation in the record of why the date of February 5, 2013 was substituted in the waiver portion of the letter, we assume that it was a clerical error.

dating or co-occurring with, though unrelated to, claimant's left-foot injury. On August 24, 2016, the Commissioner denied both motions. The Commissioner found that the settlement agreement "convey[ed] a clear and unambiguous message" and that the terms in the settlement agreement that released employer from claims related to the March 26, 2010 injuries were valid and enforceable.

¶ 11. However, the Commissioner voided the remainder of the settlement agreement on public policy grounds. The Commissioner relied on several tort cases[2] in reaching the conclusion that:

> [A] release negotiated in the context of settling a particular workers' compensation claim does not violate public policy if it is properly limited to the specifically alleged work-related "injury by accident" from which the claim arose. This is so even if it purports to shield the employer from liability for as yet undiscovered injuries, so long as they are causally related to the initial injury upon which the settlement was based.
>
> However, a release that purports to cover not only injuries arising from a pending claim, but also those that might arise from completely unrelated causes at any time during the injured worker's employment is impermissibly broad.

---

[2] See Provoncha v. Vt. Motocross Ass'n, Inc., 2009 VT 29, ¶ 20, 185 Vt. 473, 974 A.2d 1261 (holding release did not offend public policy because service provided was neither of great importance to public nor open to public at large); Thompson v. Hi Tech Motor Sports, Inc., 2008 VT 15, ¶¶ 7-9, 183 Vt. 218, 945 A.2d 368 (holding release did not implicate public policy because release placed responsibility for safe operation of property with operator rather than owner); Dalury v. S-K-I, Ltd., 164 Vt. 329, 335, 670 A.2d 795, 799 (1995) (explaining public policy dictates against prohibiting injured skier who signed general release from suing ski area for negligence because ski area remains responsible for managing risk and ensuring safety of those using property).

Based on this reasoning, the Commissioner concluded that the portions of the parties' settlement agreement releasing employer from any and all claims arising in the normal course of claimant's employment were "impermissibly broad and violate[d] public policy."[3]

¶ 12.    This interlocutory appeal followed.[4]   The Commissioner certified the following question: "As a matter of law, does the parties' September 24, 2014 approved settlement agreement bar Claimant from asserting a claim for workers' compensation benefits on account of her alleged March 10, 2015 work-related right foot injury?"   The issue now before us is whether the Commissioner correctly invalidated the general release language in the parties' settlement agreement and, by extension, correctly decided that claimant could bring a compensation claim for an injury unrelated to her initial 2010 injury.

¶ 13.    Employer argues that the Commissioner had no authority to invalidate a settlement agreement solely on public policy grounds, in the absence of a finding of fraud or mutual mistake, when it had already been approved by her designee.   Employer also argues that the parties' settlement agreement resolved all claims that claimant brought or could have brought prior to the date of settlement.  We agree that the Commissioner lacked authority to void the parties' settlement agreement on public policy grounds.

---

[3] The Commissioner's decision indicates that she interpreted the general release language in the parties' settlement agreement to relieve employer of the obligation to provide workers' compensation coverage not just for claims that may have existed before or at the time of claimant's March 2010 injury, but also claims that may have arisen from injury occurring after March 2010. On appeal, employer limits its argument to whether claimant may bring a claim for injuries that claimant knew of, or should have known of, on the date of the September 24, 2014 settlement. Thus, we need not address whether claims arising after March 2010, which are not sequelae of claimant's left-foot injury, may be brought despite the agreement's release language.

[4] The Commissioner did not resolve the question of whether the right-foot claim was causally related to the previously settled left-foot claim, finding that issues of material fact existed on this issue.

7

¶ 14. We review summary judgment rulings de novo, using the same standard as the trial court. Demag v. Better Power Equip., Inc., 2014 VT 78, ¶ 9, 197 Vt. 176, 102 A.3d 1101. Summary judgment is appropriate only where, accepting the allegations of the nonmoving party as true, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). "[T]he nonmoving party receives the benefit of all reasonable doubts and inferences." Gauthier v. Keurig Green Mountain, Inc., 2015 VT 108, ¶ 14, 200 Vt. 125, 129 A.3d 108 (quotation omitted).

¶ 15. At the outset, we note that "[u]nlike courts, which are granted their power by the Constitution, administrative bodies have only the adjudicatory authority conferred on them by statute." Workers' Comp. Div. v. Hodgdon, 171 Vt. 526, 529, 759 A.2d 73, 77 (2000) (mem.) (citation omitted) (distinguishing Commissioner of the Department of Labor and Industry's discretion in imposing fine from that of trial court when imposing fine in civil contempt matter); see also Gloss v. Del. & Hudson R.R., 135 Vt. 419, 422, 378 A.2d 507, 509 (1977) ("[A]dministrative bodies have only such adjudicatory jurisdiction as is conferred on them by statute, with nothing presumed in favor of their jurisdiction."). The Commissioner has original jurisdiction to resolve workers' compensation matters. Norse v. Melsur Corp., 143 Vt. 241, 243, 465 A.2d 275, 277 (1983). Vermont's Workers' Compensation Act, codified at 21 V.S.A. §§ 601-711, sets out the Commissioner's authority in this regard.

¶ 16. Turning to the statutory provision at issue here, 21 V.S.A. § 662(a) gives the Commissioner or her designee authority to approve settlement agreements and requires the Commissioner to consider whether a proposed agreement serves a claimant's or her dependents' best interests. But the statute authorizes the Commissioner to approve or reject a settlement agreement only at the time it is initially presented. Here, the parties' agreement was approved.

8

Nowhere in either statute or rule is the Commissioner given the authority to revisit and retract a settlement agreement at a later date and after prior approval.

¶ 17. Indeed, approved settlement agreements "shall become binding agreements and absent evidence of fraud or material mistake of fact the parties shall be deemed to have waived their right to contest the material portions thereof." Rule 17. This rule is consistent with the language in § 662(a) that approved settlement agreements are enforceable. See In re Agency of Admin., 141 Vt. 68, 74, 444 A.2d 1349, 1351-52 (1982) (upholding validity of administratively adopted rule where it will not compromise intent of statute that authorized it). Here, the Commissioner made no findings of fraud or mutual mistake of fact and was, therefore, not authorized to void the settlement agreement on public policy grounds alone. If the Legislature had intended to allow the Commissioner in this setting to reject a compromise agreement on public policy grounds, it could have done so. When a statute is either silent or ambiguous concerning a particular question, deference must be given to the agency's interpretation of a statute within the agency's area of expertise. In re Smith, 169 Vt. 162, 169, 730 A.2d 605, 611 (1999). Here, § 662(a) is neither silent nor ambiguous as to the Commissioner's charge in reviewing a settlement agreement; the only consideration to be made is whether it is in the claimant's best interests and the Commissioner is given latitude to make that determination only at the time of the initial approval of the settlement agreement.

¶ 18. Finally, we agree with employer that, as a matter of policy, the subsequent rejection of a previously approved settlement agreement does not promote efficiency and finality. We have noted that "the purpose of the workmen's compensation law is to provide not only for the employees a remedy which is both expeditious and independent of proof of fault, but also for employers, a liability which is limited and determinative." Quinn v. Pate, 124 Vt. 121, 124, 197

A.2d 795, 797 (1964) (quotation omitted). The Workers' Compensation Act benefits claimants and employers alike. The statute provides a claimant with a "process and procedure . . . as summary and simple as reasonably may be," and it ensures a determinate and finite resolution for employers. 21 V.S.A. § 602(a). We have recognized that in general settlement agreements should be enforced according to their terms to ensure finality. Cf. Spencer v. Spencer, 2014 VT 63, ¶ 8, 197 Vt. 1, 100 A.3d 334 (explaining that property settlements in divorce proceedings should be enforced according to their terms and finality is norm). Furthermore, we have stressed that orders are final by nature and "finality is about ending litigation." Youngbluth v. Youngbluth, 2010 VT 40, ¶ 18, 188 Vt. 53, 6 A.3d 677. In this case, by invalidating the parties' settlement agreement after it had been formally approved with notice to claimant of its finality, the Commissioner deprived employer of the determinate and final resolution to which it was entitled.

Reversed and remanded for the Commissioner to hold a hearing to determine whether claimant's left- and right-foot injuries are causally related.

FOR THE COURT:

Associate Justice

10