2006 VT 80

## State of Vermont v. Michelle Eldredge

[910 A.2d 816]

No. 05-039

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 4, 2006
Motions for Reargument Denied August 30, 2006

*Dan M. Davis*, Windham County State's Attorney, and *Nathaniel K. Seeley*, Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Following a conviction of two counts of cruelty to animals, defendant Michelle Eldredge appeals a trial court order that she repay the costs of providing care to animals seized from her prior to trial without first determining her ability to pay. We affirm.

¶ 2. In November of 2002, the Windham County Sheriff's Department conducted a search of defendant's home, pursuant to a warrant, and seized a number of animals that appeared to be malnourished. The

deputies brought the nine dogs, five cats, and one goat to the Windham County Humane Society (WCHS). On December 17, 2002, defendant appeared in Windham District Court to answer three counts of animal cruelty in violation of 13 V.S.A. § 352, and was assigned counsel.

¶ 3. On January 16, 2003, the State moved for forfeiture of defendant's animals pending resolution of the criminal charges. After a March 21 hearing, the trial court ordered forfeiture of the animals by written order on April 16 and ordered the animals to remain in custodial care as long as defendant continued to post security deposits with WCHS. Defendant appealed the forfeiture order as a collateral final order, but this Court denied permission to appeal. Because defendant failed to post the required security deposits with WCHS in accordance with that order, the State moved for immediate forfeiture, which the trial court granted on October 6, 2003. The animals had been in custody for eleven months. Until the court ordered forfeiture, the animals had been boarded at WCHS and fed, exercised, and given necessary veterinary treatment and care pursuant to 13 V.S.A. § 354(c). One dog was destroyed, but the others recovered from their maladies and, upon forfeiture, were put up for adoption.

¶ 4. On September 30, 2004, defendant was convicted by a jury of two counts of animal cruelty; one count had been dismissed prior to trial. Defendant received a suspended sentence and was placed on probation. In a written order on October 4, Judge Wesley required the State to present documentation of reasonable costs claimed by WCHS for providing care to defendant's animals from the time of seizure until forfeiture. Defendant was invited to "indicate the basis for any objection to the entry of a restitution order for such costs, including: a) any claim that the costs are unreasonable, and b) any claim that her financial means preclude any present order for repayment." The court stated that if defendant claimed only inability to pay, without opposition from the State, the court would "enter judgment for the amount claimed as restitution, but defer any repayment order until it may be established through enforcement proceedings initiated by the Restitution Unit that Defendant has the ability to make payments."

¶ 5. At the subsequent January 18, 2005 hearing, over which Judge Carroll presided, counsel for defendant requested findings on her ability to pay prior to issuance of any repayment order. The court denied defendant's request. Two days later, the court issued its written Order on Repayment of Costs of Care. In that order, the court found that most of WCHS's submitted expenses of boarding and caring for

defendant's animals were reasonable and ordered repayment of those reasonable costs in full, less $900 defendant had already paid, for a total of $30,629.38. In a footnote, the court wrote that it disagreed with defendant's position "that this is a restitution order requiring the Court to find an ability to pay," on the grounds that:

> WCHS is not a victim in this case, and repayment is specifically allowed pursuant to a separate . . . statutory scheme and not the statutes relating to restitution. The ability to pay will only become an issue if the amount above is not paid and there is a request for a finding of contempt. In that event, the Court will be required to find that Defendant has the ability to pay.

This appeal followed.

### I.

¶ 6. Defendant argues that the trial court erred in entering judgment against her for the costs of providing care to her animals without determining her ability to pay. At the outset, we agree with the trial court that this case does not fall within the bounds of our criminal restitution statutes. The animal cruelty statutes contain their own specific provisions regarding repayment of costs to the temporary caretaker of a defendant's animals. The trial court analyzed this case under the following statute:

> In addition to any other sentence the court may impose, the court may require a defendant convicted of a violation under section 352 or 352a of this title to: . . . Repay the reasonable costs incurred by any person, municipality or agency for providing care for the animal prior to judgment. *If the court does not order a defendant to pay all the applicable costs incurred or orders only partial payment, it shall state on the record the reasons for that action.*

13 V.S.A. § 353(b)(2) (emphasis added). Defendant argues that the emphasized language means the Legislature intended that the trial court not simply calculate the costs of caretaking of the animals, but inquire into a defendant's ability to pay prior to ordering repayment of costs. We do not agree.

¶ 7. Whether a trial court properly interprets a statute is a question of law which we review de novo. *Heffernan v. Harbeson*, 2004 VT 98, ¶ 7, 177 Vt. 239, 861 A.2d 1149. When interpreting a statute our goal is

to give effect to the intent of the Legislature, and to do so we first look at the plain, ordinary meaning of the statute. *State v. Baron*, 2004 VT 20, ¶ 6, 176 Vt. 314, 848 A.2d 275. If the plain language is clear and unambiguous, we enforce the statute according to its terms. *In re Loyal Order of Moose, Inc., Lodge #1090*, 2005 VT 31, ¶ 8, 178 Vt. 510, 872 A.2d 345 (mem.).

¶ 8. The plain meaning of the statutory language does not require the court to find an ability to pay before ordering defendant to pay the reasonable costs of caring for her animals. The Legislature knows how to signal ability to pay as a precondition to judgment — by explicitly stating so. See, e.g., 15 V.S.A. § 798(a) (providing that inability to comply with child support order is a defense to license suspension penalty).

¶ 9. The language in 13 V.S.A. § 353(b)(2) that a "court *may* require a defendant" to repay reasonable costs does allow the trial court discretion to order those costs. (Emphasis added.) But another, more recently enacted statute removes that discretion:

> If the defendant is convicted of criminal charges under this chapter[,] . . . the defendant or owner shall be required to re-pay all reasonable costs incurred by the custodial caregiver for caring for the animal, including veterinary expenses.

13 V.S.A. § 354(g)(1). This subsection was enacted in 1998. 1997, No. 130 (Adj. Sess.), § 11. Section 353(b)(2), in contrast, was enacted in 1990. 1989, No. 270 (Adj. Sess.), § 2.

¶ 10. If statutes conflict, we enforce newer statutes over older statutes. *Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica*, 2005 VT 16, ¶ 16, 178 Vt. 35, 869 A.2d 145. As § 354(g)(1) was enacted later in time, we enforce it and hold that not only did the trial court not have to determine defendant's ability to pay prior to ordering her to pay reasonable costs, it had no discretion to award any amount less than reasonable costs. The only discretion allowed to the trial court, therefore, is to determine whether the claimed costs were reasonable.

¶ 11. Defendant disagrees, and cites *Keller v. State*, 771 P.2d 379 (Wyo. 1989), in support of her argument, but that case is inapposite. The statutory language at issue in *Keller* is markedly different from 13 V.S.A. § 353(b)(2) and reads: "To the extent that a person . . . is able to provide for an attorney, the other necessary services and facilities of

representation, and court costs, the court may order him to provide for their payment." *Keller*, 771 P.2d at 387 (citation omitted). That language expressly requires a court to investigate a defendant's ability to pay and imposes costs *only* "[t]o the extent" that a defendant is "able to provide." *Id.*

¶ 12. The statute in *Keller* is also part of a recoupment scheme whereby a state seeks to recover costs from providing court-appointed counsel to indigent defendants. *Keller*, 771 P.2d at 387-88. Much of defendant's cited case law, offered to prove that the court must find ability to pay, concerns the constitutionality of similar recoupment schemes. Paramount in this line of cases is *Fuller v. Oregon*, 417 U.S. 40 (1974), in which the United States Supreme Court examined whether Oregon's statutory scheme authorizing recoupment from indigent defendants of the costs of their defense impermissibly infringed upon the right to counsel. The statute in *Fuller* was upheld because it was "tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship." *Id.* at 54. See also *State v. Morgan*, 173 Vt. 533, 535, 789 A.2d 928, 931 (2001) (mem.) (holding that under *Fuller*, Sixth Amendment requires trial court to make finding that defendant has or will have ability to pay reimbursement amount within statutory time period before imposing payment obligation).

¶ 13. The cases upon which defendant relies do not support her argument. The fact that *Fuller* and its progeny require a finding of ability to pay does not mean that one is required here because those cases concern whether schemes to exact payment for the costs of appointed counsel from criminal defendants unconstitutionally impinge upon the exercise of the Sixth Amendment right to counsel. Here, no constitutional right to counsel is implicated; the trial court instead ordered defendant to pay the costs of caring for her animals during the litigation. See *State v. Diamondstone*, 132 Vt. 303, 305, 318 A.2d 654, 656 (1974) (holding that court not required to find ability to pay before imposing criminal fine).

¶ 14. Defendant also cites *State v. Haught*, 371 S.E.2d 54 (W.Va. 1988), but in that case, the West Virginia Supreme Court of Appeals held that it was error to impose fines, costs, and attorneys' fees and to recommend that *parole not be considered* until all monies were paid, without first considering the defendant's financial resources and ability to pay. *Id.* at 59. *Haught* followed the principle in *Bearden v. Georgia*, 461 U.S. 660, 672 (1983), in which the United States Supreme Court

held that in probation revocation proceedings for failure to pay fines or restitution a court must inquire into the reasons for a defendant's failure to pay; see also *Tate v. Short*, 401 U.S. 395, 398 (1971) (holding that a state cannot "impos[e] a fine as a sentence and then automatically conver[t] it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full.") (internal quotations omitted). As to costs and fines that do not relate to the constitutional right to counsel, then, a court must consider the defendant's ability to pay only when seeking to imprison a defendant for failure to pay.

## II.

¶ 15. Finally, to the extent that defendant argues that the trial court abused its discretion in choosing an amount of costs to assess, we do not agree. As decided above, the only discretion afforded to the trial judge was to determine which costs claimed by WCHS were reasonable. We review such matters for an abuse of discretion. See *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 251, 668 A.2d 659, 669 (1995) ("[T]he trial court is in the best position to determine a reasonable fee.").

¶ 16. Specifically, defendant argues that the imposition of such a penalty would damage her creditworthiness, saddle her with postjudgment interest accruing at a rate of twelve percent per year, and render her ineligible for a homestead exemption in the event that she purchased a home. Beyond their speculative nature, these claims do not address the reasonableness of the costs. The trial court accordingly found, within its exercise of discretion, that the vast majority of the costs were reasonable. It struck some of the proposed costs but assessed most of them, and was under no obligation to consider defendant's ability to pay prior to doing so.

*Affirmed.*