*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-041

DECEMBER TERM, 2016

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Lamoille Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Russell G. Goodell | } | DOCKET NO. 198-4-15 Lecr |

Trial Judge: Dennis R. Pearson

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a superior court order that he repay a total of $3081 for the care of two dogs following his conviction of two counts of cruelty to animals. Defendant contends that the evidence did not support the award. We affirm.

In April 2015, defendant was charged with six counts of animal cruelty, in violation of 13 V.S.A. § 352(4), which prohibits "depriv[ing] an animal . . . of adequate food, water, shelter, rest, sanitation, or necessary medical attention, or transport[ing] an animal in overcrowded vehicles." In September 2015, pursuant to a plea bargain, defendant pled nolo contendere to two of the charges concerning two dogs named Peanut and Reba, the other charges were dismissed, and defendant received an aggregate sentence of three months to two years, all suspended, and was placed on probation.

Under 13 V.S.A. § 354(g)(1), a defendant convicted of animal cruelty "shall be required to repay all reasonable costs incurred by the custodial caregiver for caring for the animal, including veterinary expenses." As the court here observed, the statutory presumption is that the defendant will fully repay all such costs incurred, as Vermont law also provides: "If the Court does not order a defendant to pay all the applicable costs incurred or orders only partial payment, it shall state on the record the reasons for that action." 13 V.S.A. § 353(b)(2). As the court here also noted, the restitution provisions of the animal-cruelty statute stand apart from the general criminal restitution statutes, and do not incorporate the requirement of findings concerning the "material loss" incurred by the victim or the offender's "current ability to pay," as required under 13 V.S.A. § 7043(d)(2). See State v. Eldredge, 2006 VT 80, ¶¶ 6-8, 180 Vt. 278 (noting that animal cruelty statutes "contain their own specific provisions regarding repayment of costs" and holding that "[t]he plain meaning of statutory language does not require the court to find an ability to pay before ordering defendant to pay the reasonable costs of caring for [defendant's] animals").

Following defendant's plea, the court held a restitution hearing. The director of operations for the Central Vermont Humane Society (CVHS) testified that CVHS paid $216 for the initial veterinary care of Peanut, who also received ongoing shelter and treatment at CVHS for a period of twelve days, for a total cost of $300. The director testified that costs incurred by CVHS for the

care and treatment of animals include animal-care personnel, a medical technician, medical supplies, vaccinations, tick and parasite treatment, food, and general facility expenses, and that CVHS charges $25 per day to defray costs.  The director testified that boarding facilities in the area typically charge $25 to $35 per day.

In addition to the twelve days at CVHS, the director recalled that Peanut was also compelled to spend an additional period of time in foster care "because of his medical condition and potential of communicable diseases."  He was severely underweight and had skin conditions which required "more intensive" foster care for nineteen days before he could be returned to the shelter "healthy and adoptable."  The additional period in foster care was also necessary because both dogs were very fearful and were not housebroken, and required time for training and slow, positive behavioral reinforcement.  The director testified that CVHS covers all the costs when a dog is in foster care, not just food and basic supplies but also ongoing medical care and specialized behavioral training, for which it also charges $25 per day.  For Peanut, the additional cost of nineteen days in foster care was $475.  Together with the veterinary and shelter costs, the total costs incurred for Peanut came to $991.

Reba was placed in a shelter run by the North Country Animal League.  North Country's manager testified that Reba required initial veterinary care costing $96 plus $140 for specific medical supplies, and that she spent thirty days at the shelter before she was ready for foster care. The manager explained that the average daily cost for the shelter to cover medical care and staff, parasite control, flea treatments, heartworm tests, as well as basic food and supplies, was $70 per day.  Reba then spent an additional period of time in foster care for the same reasons as Peanut; she was "incredibly unsocialized" and also dangerous, and required specialized care and training before she could be returned to the shelter.  The shelter provides all the necessary food, medical treatment, and supplies for a dog while in foster care.  The manager estimated that the specialized foster care that Reba received would cost about $800 per week in a private facility, and recalled that Reba remained in foster care for five or six months, but explained that the shelter was seeking reimbursement for only thirty days.

The court noted that North Country had not provided any reason why its per diem costs for dogs at the shelter were substantially higher than those of CVHS, and found $35 per day to be reasonable as the upper limit of the average boarding costs in the area.  The court also awarded costs for four weeks of foster care at $200 per week, a daily rate of $28.57 which the court noted was comparable to the foster-care costs of Peanut.  The total expenses for care and treatment of Reba thus totaled $2090.*

The court found that the reasonable costs incurred by the custodial caregivers for Peanut and Reba totaled $3081 ($991 plus $2090), and ordered defendant to repay that amount.  This appeal followed.

As we observed in Eldredge, under the restitution provisions of the animal-cruelty statute the "only discretion afforded to the trial judge was to determine which costs . . . were reasonable," a decision which we review solely for "abuse of discretion."  2006 VT 80, ¶ 15.  Here, defendant maintains that the court abused its discretion in determining the reasonable costs incurred, asserting that the "only actual expenditures" supported by the evidence were the veterinary bills for Peanut and Reba, totaling $216 and $96 respectively, and the additional medical supplies for

---

* The court inexplicably awarded $144 for medical supplies rather than $140, which was the amount specified by North Country's manager.  The judgment will be modified accordingly.

Reba of $140.  Defendant asserts that the balance of the award was improper because no specific evidence was adduced relating the "actual" expenses incurred by Peanut and Reba to the average costs for shelter and foster care specified by the shelter managers.  We have held, however, that an award of restitution does not required "mathematical certainty," but only "a reasonable basis for estimating the loss."  State v. May, 166 Vt. 41, 43-44 (1996).  The testimony here by the shelter managers outlining the various costs incurred in the care and treatment of dogs at the shelters and in foster care, and the comparable fees charged by other facilities in the area, was sufficient to provide a reasonable estimate of the costs incurred in providing care for Peanut and Reba in this case.  See State v. Driscoll, 2008 VT 101, ¶ 14, 184 Vt. 381 (holding that, although it amounted to an "approximation," court's downward adjustment of fair market value of deer offered by owner was sufficient to establish reasonable estimate for restitution award).  Accordingly, we find no abuse of discretion, and no basis to disturb the judgment.

The judgment is affirmed, but the amount of the restitution award is reduced to $3077.


BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

3