NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 2

No. 2021-145

| | |
|---|---|
| The Estate of Richard S. Daniels, by and through Julie Lyford in her capacity as Executor et al. | Supreme Court |
| v. | On Appeal from Superior Court, Rutland Unit, Civil Division |
| James Goss, et al. | December Term, 2021 |

Helen M. Toor, J.

Ritchie E. Berger and Justin B. Barnard of Dinse P.C., Burlington, for Plaintiffs-Appellants.

William L. Gagnon and Evan A. Foxx of Heilmann, Ekman, Cooley & Gagnon, Inc., Burlington, for Defendants-Appellees.

Thomas J. Donovan, Jr., Attorney General, and Nicholas F. Persampieri, Assistant Attorney General, Montpelier, for Amicus State.

PRESENT: Eaton and Carroll, JJ., and Zonay and Carlson, Supr. JJ., and Morris, Supr. J. (Ret), Specially Assigned

¶ 1. **EATON, J.** In this legal-malpractice case, plaintiff Richard Daniels[1] appeals the trial court's grant of summary judgment in favor of defendants Attorney James Goss, Attorney Matthew Hart, and law firm Facey Goss & McPhee P.C. (FGM), arguing the court erred when it concluded he could not prove defendants caused his injury as a matter of law. Defendants represented plaintiff in a state environmental enforcement action where he was found liable for a

---

[1] Richard Daniels died during pendency of the proceedings below, and his estate was substituted as plaintiff. For consistency and clarity, this opinion uses "plaintiff" when referring to either Richard Daniels or his estate.

hazardous-waste contamination on his property. On appeal, plaintiff asserts that defendants failed to properly raise two dispositive defenses: the statute of limitations and proportional liability. We conclude plaintiff would not have prevailed on either defense if raised and therefore affirm the grant of judgment to defendants.

¶ 2. The undisputed facts are as follows. The case underlying this legal-malpractice action came before us in Agency of Natural Resources v. Parkway Cleaners, 2019 VT 21, 209 Vt. 620, 210 A.3d 445. That decision details the factual and procedural history, which we briefly restate here. The property at issue is located in Hartford, Vermont, and is the site of a documented hazardous-waste release. From the late 1970s to late 1980s, a dry-cleaning business operated on the property. At some point, perchloroethylene (PERC), a known human carcinogen and hazardous-waste material used in dry-cleaning operations at the time, was dumped on the property or released from the dry-cleaning equipment. The state began to investigate the contamination in 1987. Plaintiff purchased the property through a tax sale in 1995. In 2002, the state began to communicate with plaintiff regarding the PERC contamination on the property.

¶ 3. In 2006, plaintiff hired defendant FGM to represent him in responding to the state's investigation with Goss to serve as a principal attorney in the case. Goss advised plaintiff to transfer the property from his name to a company in an effort to limit his liability. In late 2006, plaintiff conveyed title to the property to Hazen Street Holdings, Inc., a company defendants created for plaintiff for this purpose, and ceased cooperating with the state.

¶ 4. In July 2010, the state filed a complaint against plaintiff, individually and as principal of Hazen Street, under 10 V.S.A. §§ 6615 and 8221, asserting he was liable for the hazardous-waste contamination as the current owner of the property. Plaintiff retained FGM to represent him in the state's enforcement action, and attorneys Goss and Hart were assigned to handle plaintiff's case. In January 2014, defendants moved for summary judgment on all the state's claims, arguing plaintiff could not be held liable because he was a former owner and no

2

release had occurred during his ownership. Defendants did not raise the statute-of-limitations argument in this motion although they had raised it in plaintiff's answer. The court denied plaintiff's motion and instead granted the state's cross-motion for summary judgment on liability, ruling that plaintiff's transfer to Hazen Street was fraudulent and he was liable as a current owner under 10 V.S.A. § 6615(a)(1), which does not require the release of hazardous waste to occur during ownership.

¶ 5. Dissatisfied with defendants' representation, plaintiff engaged new counsel and moved to substitute counsel in October 2015, which the court approved in June 2016. New counsel moved to reopen discovery to develop additional facts and later moved to reopen summary judgment to raise the statute-of-limitations defense, both of which the trial court denied. Following a 2017 trial to determine monetary and injunctive relief, the trial court issued a final judgment order in 2018 reaffirming its earlier summary judgment ruling on liability, awarding damages, and issuing a mandatory injunction requiring plaintiff to undertake an environmental site investigation and other appropriate corrective actions. Plaintiff appealed to this Court, arguing—among other things—that the trial court abused its discretion in declining to reopen summary judgment to consider new evidence bearing on the statute-of-limitations defense. We affirmed the trial court's decision, concluding in relevant part that plaintiff waived his statute-of-limitations argument by failing to properly present it in a timely manner. Parkway Cleaners, 2019 VT 21, ¶ 45.

¶ 6. In July 2019, plaintiff filed a legal-malpractice action against defendants, asserting claims for professional negligence and breach of fiduciary duty, and seeking declaratory judgment on defendants' indemnity to plaintiff for his continuing costs stemming from the state's enforcement action.[2] Plaintiff alleged nine theories of liability to demonstrate defendants' professional negligence, two of which are relevant here: (1) defendants should have raised the

---

[2] The complaint was amended upon plaintiff's death to remove a claim for violation of the Vermont Consumer Protection Act.

3

statute of limitations because the state's enforcement action was time-barred, and (2) defendants should have raised a proportional-liability defense, which would have reduced or eliminated plaintiff's liability. Defendants moved for summary judgment on all plaintiff's claims, and the trial court granted the motion.

¶ 7. On the professional-negligence claim, the court held that plaintiff would not likely have succeeded on either the statute-of-limitations or the proportional-liability defense as a matter of law. Acknowledging uncertainties in the law, the court concluded that ownership of the noncompliant, contaminated property constituted a "continuing violation" such that the limitations period had not run when the state brought its enforcement action against plaintiff. Next, the court concluded that the proportional-liability defense argument likely would have failed if raised, because the defense was unavailable to persons held liable as current owners under § 6615(a)(1). The court granted summary judgment on the breach-of-fiduciary-duty claim for the same reasons as the legal-malpractice claim, and held that the declaratory-judgment claim was moot because the substantive claims had been rejected. Plaintiff appealed.

¶ 8. On appeal, plaintiff argues: (1) the statute-of-limitations defense would not have failed, because mere ownership of a contaminated property is not a "continuing violation" under 10 V.S.A. §§ 6615 and 8015; and (2) he was not prevented as a matter of law from raising the proportional-liability defense under 10 V.S.A. § 6615(c) because the defense is available to persons liable solely based on current ownership of a contaminated property.

¶ 9. We review a motion for summary judgment without deference, applying the same standard as the trial court. Agency of Nat. Res. v. U.S. Fire Ins. Co., 173 Vt. 302, 305, 796 A.2d 476, 478 (2001). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). The material facts in this case are undisputed so we proceed to the questions of law.

¶ 10. To succeed on an attorney-malpractice claim, a plaintiff must prove "both that [the] defendant was negligent and that the negligence was the proximate cause of [the] plaintiff's harm." Powers v. Hayes, 172 Vt. 535, 536, 776 A.2d 374, 375 (2001) (mem.). "Proximate cause requires a plaintiff to demonstrate by a preponderance of the evidence that the attorney's act was a cause-in-fact of the plaintiff's injury." Sachs v. Downs Rachlin Martin PLLC, 2017 VT 100, ¶ 19, 206 Vt. 157, 179 A.3d 182. To establish causation in this case, plaintiff had to show he would have succeeded in his defense of the state's enforcement action "but for defendants' failure" to raise either the statute of limitations or the proportional-liability defense. Knott v. Pratt, 158 Vt. 334, 336, 609 A.2d 232, 233 (1992). Whether plaintiff would have prevailed on either of these arguments is a question of statutory interpretation, which we review de novo. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383, 910 A.2d 893.

¶ 11. When interpreting a statute, this Court's aim is to "determine and give effect to the intent of the Legislature." Delta Psi Fraternity v. City of Burlington, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54 (quotation omitted). This inquiry begins with the plain meaning of the language of the statute. Flint v. Dep't of Labor, 2017 VT 89, ¶ 5, 205 Vt. 558, 177 A.3d 1080. "Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used." In re M.C., 2018 VT 139, ¶ 9, 209 Vt. 219, 204 A.3d 1123 (quotation omitted). When the plain language is ambiguous, we construe statutes in light of the "entire statutory scheme." Holmberg v. Brent, 161 Vt. 153, 155, 636 A.2d 333, 335 (1993). In doing so, we look to the statute's "purpose, effects[,] and consequences." Estate of Frant v. Haystack Grp., Inc., 162 Vt. 11, 14, 641 A.2d 765, 767 (1994).

¶ 12. We turn first to the statute of limitations, then to the proportional-liability defense, and conclude plaintiffs' arguments for both are without merit and therefore would not have prevailed if properly raised.

5

## I. Statute of Limitations

¶ 13. Plaintiff would not have succeeded in defending the underlying action by raising a statute-of-limitations defense because the state's enforcement action was not time-barred. Although we have not previously addressed the applicable statute of limitations for an action enforcing 10 V.S.A. § 6615, we conclude—and the parties agree—that 10 V.S.A. § 8015 applies.[3] By its plain language, § 8015 applies to "actions brought under [chapter 201] or chapter 211 of [Title 10]." Section 6615 falls under chapter 159, which is enforceable under chapters 201 and 211. See 10 V.S.A. § 8003(a)(12) (listing chapter 159 as enforceable through action brought under chapter 201); id. § 8221 (falling under chapter 211 and providing authority to ensure compliance with statutes listed in § 8003(a)). Furthermore, in this case, the state brought its enforcement action against plaintiff under § 8221 of chapter 211.

¶ 14. Under 10 V.S.A. § 8015, an action "shall be commenced within the later of: (1) six years from the date the violation is or reasonably should have been discovered; or (2) six years from the date a continuing violation ceases." For purposes of this statute, "violation" is defined as "noncompliance with one or more of the statutes specified in section 8003 of this title, or any related rules, permits, assurances, or orders." 10 V.S.A. § 8002(9). A "continuing violation" is "any violation that lasts longer than one day." Agency of Nat. Res. v. Deso, 2003 VT 36, ¶ 14, 175 Vt. 513, 824 A.2d 558 (mem.).

¶ 15. We conclude that plaintiff, as current owner of the property, was committing a continuing violation by failing to abate the existing noncompliance on the property. This conclusion is supported by the statutory language, the overall statutory scheme, and the statute's purpose.

---

[3] Plaintiff argued below that the appropriate statute of limitations was 12 V.S.A. § 511, the general provision for civil actions, but conceded in his appellate brief that the controlling statute was likely 10 V.S.A. § 8015.

¶ 16.    First, the plain language of § 6615 dictates that each day of ownership of a property with an unremediated hazardous-waste contamination is a violation.  See Flint, 2017 VT 89, ¶ 5 (explaining that statutory interpretation begins with plain language of statute).  Under 10 V.S.A. § 6615(a), a responsible person is liable for "(A) abating [the release of hazardous materials] or threatened release; and (B) costs of investigation, removal, and remedial actions incurred by the State which are necessary to protect the public health or the environment."  To establish a prima facie case for a violation under § 6615, the state must prove: "a person is liable under § 6615 [because] the person falls into one of the four categories of liable parties set forth in § 6615(a); a release or threatened release has occurred on the site; and the defenses under § 6615(d) and (e) do not apply."  Parkway Cleaners, 2019 VT 21, ¶ 27 (emphasis omitted).  All three of these requirements were met in the underlying case.

¶ 17.    As to the first requirement, plaintiff falls into a category of responsible persons who may be held liable under the statute as "the owner or operator of a facility, or both."  10 V.S.A. § 6615(a)(1).  In Parkway Cleaners, we explained that § 6615(a)(1) "confers liability for the release of hazardous materials solely based on ownership of the property."  2019 VT 21, ¶ 19; see 10 V.S.A. § 8002(9) (defining "violation" as "noncompliance with one or more of the statutes specified in section 8003 of this title, or any related rules, permits, assurances, or orders").  An owner is "[s]omeone who has the right to possess, use, and convey something."  Owner, Black's Law Dictionary (11th ed. 2019).  It is a legal status that may occur over a period of time—as long as that person has the right to possess—rather than a singular action.  Compare Own, Black's Law Dictionary (11th ed. 2019) ("To rightfully have or possess as a property; to have legal title to."), with Acquire, Black's Law Dictionary (11th ed. 2019) ("To gain possession or control of; to get or obtain."), and Purchaser, Black's Law Dictionary (11th ed. 2019) ("Someone who obtains property for money or other valuable consideration.").  Because the violative conduct—ownership of a contaminated property—lasted more than one day in this case, it is a continuing violation.  See

7

Deso, 2003 VT 36, ¶ 14 (defining "continuing violation" as "any violation that lasts longer than one day").

¶ 18.    Though the plain language is sufficient to reach our conclusion, we emphasize that our construction is also consistent with the statute as a whole and with its purpose. Construing the statute to include current owners as responsible persons is consistent with the other subsections of § 6615 and with § 6615b, which require a responsible person to take removal and remedial actions. See Holmberg, 161 Vt. at 155, 636 A.2d at 335 (explaining that statutes should be construed considering "entire statutory scheme"). "In the event that the responsible person or persons fails to act in a timely manner to take the necessary removal and remedial actions," the appropriate state actors may take actions to order them to do so. 10 V.S.A. § 6615(b). A responsible person is also required to take actions to mitigate the effects of the hazardous-waste release. See id. § 6615b ("Any person who is determined to be liable . . . shall take all of the following actions to mitigate the effects of the release . . . ."). These two provisions demonstrate that a responsible person has a duty to perform certain remedial actions so long as the contamination remains on the property. The obligation to take remedial actions may be necessitated by the continued existence of hazardous waste on a property, but it is triggered by one's status as a responsible person. Therefore, the inquiry as to whether a person is in "violation" of this statutory scheme should focus on what makes a person responsible. In this case, ownership is the basis of liability and as such each day of continued ownership of a property with an unremediated hazardous-waste contamination is a violation.

¶ 19.    The purpose of the statute also supports this construction of ownership as a continuing violation. Section 6615 is part of the Vermont Waste Management Act (VWMA), a remedial statute that should be construed broadly to effectuate its purpose. See Parkway Cleaners, 2019 VT 21, ¶ 16 (stating that " 'remedial statutes ought to be liberally construed' to accomplish their remedial purposes" (quoting Wilk v. Wilk, 173 Vt. 343, 346, 795 A.2d 1191, 1193 (2002)).

8

The statute creates broad liability for all current owners and carves out a "narrow exception to liability for purchasers who, in good faith and with diligent investigation, took ownership of a property with a preexisting release of hazardous materials." Id. ¶ 23; see also 10 V.S.A. § 6615(e) (containing innocent-purchaser exception); State v. Howe Cleaners, Inc., 2010 VT 70, ¶ 58, 188 Vt. 303, 9 A.3d 276 (Johnson, J., dissenting in part, and concurring in part) ("The purpose and statutory scheme of the VWMA, and its federal counterpart [CERCLA], indicate that the remedial goals of these statutes were intended to be quite broad and that the exceptions to liability quite narrow."). The VWMA's purpose "is to protect public health and the environment by facilitating the cleanup of hazardous-waste sites." Parkway Cleaners, 2019 VT 21, ¶ 17. The decision to hold responsible persons strictly liable, jointly and severally, effectuates this purpose by ensuring that responsible persons bear the financial burden of cleanup. See Price Trucking Corp. v. Norampac Indus., Inc., 748 F.3d 75, 79 (2d Cir. 2014) ("CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." (quotation omitted)); Parkway Cleaners, 2019 VT 21, ¶ 25 (explaining that VWMA "largely tracks" CERCLA and "we look to interpretation of the comparable federal [provisions] for guidance in interpreting our own provision" (quotation omitted)). Concluding that ownership of a property with an unremediated hazardous-waste contamination is a continuing violation serves this remedial purpose by ensuring that the state can hold a responsible person in current control of the contaminated property accountable for the cleanup and the costs involved. For these reasons, plaintiff, as an owner who does not fall within the statutory exception for ownership liability pursuant to 10 V.S.A. § 6615(e), see infra ¶ 27 n.4., was committing a continuing violation so long as the property's contamination was unaddressed.

¶ 20. Plaintiff's arguments to the contrary are unavailing. Plaintiff argues "failure to remedy" a contamination is not a continuing violation, because mere ownership of a property with

a hazardous-waste contamination cannot satisfy the "action" requirement of the common-law continuing-tort doctrine. See Gettis v. Green Mountain Econ. Dev. Corp., 2005 VT 117, ¶ 25, 179 Vt. 117, 892 A.2d 162 (stating common-law continuing-tort doctrine requires "some action contributing to the wrong that occurred within the limitations period"). We decline to rely on the common-law continuing-tort doctrine, which we have never formally adopted, id. ¶ 24, to limit our interpretation of the Legislature's plain language in a state environmental enforcement statute. See In re Ambassador Ins. Co., 2008 VT 105, ¶ 18, 184 Vt. 408, 965 A.2d 486 (stating rule of construction requiring Legislature's express intent to displace common law only applies where "statute encompasses an area previously governed by the common law").

¶ 21.   Plaintiff also relies in part on federal environmental jurisprudence stating that a hazardous-waste contamination "violation" occurs at the moment of release, rather than being a "continuing violation" each day the release remains unaddressed. This argument is unpersuasive. We do not need to rely on the federal environmental jurisprudence cited to interpret our statute because the statutes at play in those cases are not comparable to 10 V.S.A. § 6615. See Parkway Cleaners, 2019 VT 21, ¶ 25 (stating we look to "comparable" federal provisions for guidance (quotation omitted)).

¶ 22.   The federal cases cited do not interpret CERCLA's § 9607—the counterpart to the VWMA's § 6615—because its statute of limitations has no "continuing violation" rule. See 42 U.S.C. § 9613(g) (providing actions for natural resources damages must be brought within three years of discovery or promulgation of regulation, and actions for recovery of costs must be brought within three years after completion of removal and within six years after initiation of remedial action). Instead, the federal jurisprudence involves environmental statutes for which the basis of liability is the act of releasing polluting materials, not strict liability for ownership of a contaminated property, and the type of action is a citizen suit rather than government enforcement. See, e.g., Haber Land Co. Ltd. v. Am. Steel City Indus. Leasing, Inc., 388 F. Supp. 3d 1050, 1059

10

(S.D. Ind. 2019) (Toxic Substances Control Act); Gache v. Town of Harrison, 813 F. Supp. 1037, 1041 (S.D.N.Y. 1993) (Resource Conservation Recovery Act); Conn. Coastal Fishermen's Ass'n v. Remington Arms Co., 989 F.2d 1305, 1313 (2d Cir. 1993) (Clean Water Act). Because these statutes are unlike § 6615 on both the basis of liability and type of action, the cases interpreting them are not persuasive for the specific question before us.

¶ 23. Plaintiff also makes various arguments to the effect that interpreting mere ownership of a contaminated property, as opposed to the moment the property is acquired without diligent investigation, as a "violation" would be unfair. Generally, "statutes should not be construed to produce absurd or illogical consequences." Rhodes v. Town of Georgia, 166 Vt. 153, 157, 688 A.2d 1309, 1311 (1997). However, "[a] statute is not absurd simply because it causes an outcome that . . . a litigant believes to be anomalous or perhaps unwise." Billewicz v. Town of Fair Haven, 2021 VT 20, ¶ 28, __ Vt. __, 254 A.3d 194 (quotation omitted).

¶ 24. To begin, plaintiff argues that interpreting ownership as a "continuing violation" would lead to undesirable results because it would "impose liability in perpetuity on owners of contaminated properties who played no part in the contamination, while allowing those who were directly responsible . . . to escape liability on statute-of-limitations grounds where the [s]tate has sat on its rights." First, owners "who played no part in the contamination" can avoid liability if they meet the innocent-purchaser exception. See 10 V.S.A. § 6615(e) (stating owner is liable "unless he or she can establish . . . , based upon a diligent and appropriate investigation . . . that he or she had no knowledge or reason to know that the release or threatened release was located on the facility" when property was acquired). Second, former owners responsible for the hazardous-waste release would still be liable to a current owner in an action for contribution and indemnification pursuant to 10 V.S.A. § 6615(i). The statute of limitations on these actions would not begin to run until after the current owner is held liable under § 6615(a)(1), meaning those "directly responsible" would not "escape liability" to a current owner. See State v. Carroll, 171

Vt. 395, 399, 765 A.2d 500, 502-03 (2000) (explaining that third-party claim for contribution and indemnification for cleanup costs could not be brought until state brought claim against defendant).

¶ 25. Next, plaintiff argues that construing ownership as a continuing violation would effectively eliminate the statute of limitations for § 6615(a)(1) without legislative authority. See Depot Square Pizzeria, LLC v. Dep't of Taxes, 2017 VT 29, ¶ 11, 204 Vt. 536, 169 A.3d 204 ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority." (quotation omitted)). However, in this case, the Legislature provided in the statute's text that the limitations period would begin to run "from the date a continuing violation ceases." 10 V.S.A. § 8015. The violation here may cease if one of two things occur: (1) the owner sells the property, or (2) the owner brings the property into compliance with the statute by remediating the hazardous-waste contamination accordingly. Therefore, this interpretation of "violation" neither implies actions contrary to the Legislature's explicit request nor holds current owners perpetually liable.

¶ 26. Finally, there is no merit to plaintiff's assertion that concluding ownership of a noncompliant property is a continuing violation renders former owners who did not contribute to the hazardous-waste release liable up to six years after the property is conveyed in contravention of our case law interpreting § 6615(a)(2). We do not reach this issue because it is not ripe here. Plaintiff's liability is based on § 6615(a)(1) and his status as owner of the property when the state brought its enforcement action. His speculation that all former owners will now be liable for six years from conveyance regardless of any release or threatened release during their ownership is not an issue affecting him and therefore any decision on our part would be dicta. See State v. M.W., 2012 VT 66, ¶ 11, 192 Vt. 198, 57 A.3d 696 ("Claims are ripe when there is a sufficiently concrete case or controversy and when the exercise of judicial power is justified by prudential considerations." (quotation omitted)). As such, we decline to entertain it.

12

¶ 27. In sum, plaintiff's various arguments do not show that interpreting "violation" according to the plain meaning and purpose of the statute in this case would be absurd or illogical. See Billewicz, 2021 VT 20, ¶ 28 ("A statute is not absurd simply because it causes an outcome that . . . a litigant believes to be anomalous or perhaps unwise." (quotation omitted)).[4] An owner liable under § 6615(a)(1) is in "violation" each day ownership continues without any remediation of the hazardous-waste contamination. Because the violation in this case spans over multiple days, it is a continuing violation. See Deso, 2003 VT 36, ¶ 14 (defining "continuing violation" as "any violation that lasts longer than one day"). The limitations period had not even begun to run here because plaintiff still had ownership and no remediation had occurred when the state brought its enforcement action. For these reasons, we conclude plaintiff would not have succeeded in defending against the underlying state enforcement action using a statute-of-limitations defense.

## II. Proportional-liability Defense

¶ 28. We conclude the proportional-liability defense was not available to plaintiff as a matter of law, because it does not apply to persons liable solely as current owners. Under 10 V.S.A. § 6615, responsible persons are presumptively held jointly and severally liable for the cleanup of a contaminated property. See 10 V.S.A. § 6615(c) (stating responsible persons "shall be strictly liable, jointly and severally, without regard to fault, for all cleanup, removal, and remedial costs"). The proportional-liability defense is an exception to the default rule and provides a way for responsible persons to limit their liability to a portion of the cleanup costs according to their responsibility. See id. (providing that "it shall be a defense to joint and several liability under

---

[4] Though plaintiff's statute-of-limitations argument opines the unfairness of holding him liable simply due to ownership, we will not relitigate the question of whether he is a responsible person under the statute. Plaintiff does not assert in this case, nor did he argue in the underlying case, that the innocent-purchaser exception applies to him. We held in Parkway Cleaners—and reiterate here—that the Legislature chose to define current owners as responsible persons, regardless of whether a hazardous-waste release occurred during their ownership, unless they meet one of the narrow exceptions available, like that for an innocent purchaser. 2019 VT 21, ¶ 23.

13

this section if the responsible person establishes by a preponderance of the evidence that he or she is responsible for only a certain portion of the costs . . . then that person's liability shall be limited to the amount so established").

¶ 29.    Under the plain language of the statute, the defense does not apply in this case for two reasons.  First, proportional liability concerns liability for actors who contaminate and are not merely owners of contaminated property.  Second, proportional liability is relevant only when there is more than one contaminator so that their contributions to the hazardous-waste release can be directly compared.

¶ 30.    Analyzing the plain language of the statute, the proportional-liability defense does not apply to responsible persons whose sole basis of liability is ownership under § 6615(a)(1).  See In re M.C., 2018 VT 139, ¶ 9 ("Where the Legislature's intent can be ascertained from the plain meaning of the statute, we interpret the statute according to the words the Legislature used." (quotation omitted)).  The statute starts the sentence containing the proportional-liability defense with "[w]here hazardous materials released by one person are or may be mixed with those released by another."  10 V.S.A. § 6615(c).  Thus, the defense concerns those actors who release hazardous materials, not those, like plaintiff, owning already-contaminated property.

¶ 31.    The plain meaning also requires that there be two or more persons who released hazardous-waste materials for the proportional-liability defense to apply.  When calculating the portion of costs attributable to the responsible person under the proportional-liability defense, the statute requires "consider[ation of] such factors as the volume and toxicity of the material contributed by the person to the release."  Id.  This language demonstrates that the Legislature designed the proportional-liability defense to apply in situations where there are multiple releases by different responsible persons so that the amount of their release contributions can be compared. There can be no "proportionality" between the violations of those liable based on release and those liable based on current ownership because the nature of their violations is different.  The statute is

14

clear on its face, and we need not inquire further. See State v. Eldredge, 2006 VT 80, ¶ 7, 180 Vt. 278, 910 A.2d 816 ("If the plain language is clear and unambiguous, we enforce the statute according to its terms."). Because plaintiff's circumstances do not involve his contributing to the mixing of multiple hazardous-waste releases, the proportional-liability defense does not apply to him.

¶ 32.    Plaintiff's statutory analysis in support of the proportional-liability defense applying to him primarily relies on legislative history and is unavailing. Since the statute is clear, we need not address plaintiff's argument that the legislative history of the proportional-liability defense demonstrates the Legislature intended it to apply to current owners. See Flint, 2017 VT 89, ¶ 5 (stating that we need not consider legislative history if plain language is clear).

¶ 33.    Moreover, contrary to owner's assertions, our interpretation of the statute would not lead to illogical results. See Rhodes, 166 Vt. at 157, 688 A.2d at 1311 (observing that "statutes should not be construed to produce absurd or illogical consequences"). Plaintiff argues it would be arbitrary and unfair to hold a current owner liable for 100% of the remediation costs while those who contributed to the hazardous-waste release could potentially reduce their liability to 1%. However, owners liable under subsection (a)(1) may eliminate their liability entirely by meeting the innocent-purchaser exception, so the statutory scheme as written does not arbitrarily deny owners the ability to defend against liability for the costs of cleanup. See 10 V.S.A. § 6615(e); Holmberg, 161 Vt. at 155, 636 A.2d at 335 (stating that we construe statutes as whole). If the innocent-purchaser exception does not apply, current owners may also attempt to reduce their financial burden for the costs of cleanup by seeking contribution and indemnification from other responsible persons. See 10 V.S.A. § 6615(i).

¶ 34.    When applying the "canon of construction which counsels in favor of avoiding absurd or illogical results," we must take "care to avoid substitut[ing] this Court's policy judgments for those of the Legislature." Billewicz, 2021 VT 20, ¶ 28 (quotation omitted). It is

15

reasonable to conclude that the Legislature made different judgements for the culpability of different types of responsible persons and designed various exceptions limiting liability accordingly; therefore, we do not consider the conclusion that the proportional-liability defense does not apply to current owners under § 6615(a)(1) to be absurd.  See id. ¶ 29 (explaining that canon against absurdity appropriate " 'where it is quite impossible that [the Legislature] could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone' " (quoting Gibbons v. Bristol-Myers Squibb Co., 919 F.3d 699, 705-06 (2d Cir. 2019)).

¶ 35.    Because the proportional-liability defense does not apply to responsible persons liable solely based on current ownership, plaintiff would not have succeeded in defending the state enforcement action even if defendants had raised this argument.

¶ 36.    Therefore, we conclude plaintiff's arguments on both the statute-of-limitations defense and the proportional-liability defense would have failed as a matter of law if raised in the underlying proceedings.  As such, plaintiff cannot establish that but for defendants' failure to raise these arguments, he would have successfully defended against the state's enforcement action.  For these reasons, the trial court properly granted defendants' motion for summary judgment.

Affirmed.

FOR THE COURT:

_____

Associate Justice

16