Filed 11/19/24

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-04227

Vermont Mutual Insurance Company v. Dale Johnson et al

## DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Vermont Mutual Insurance Company (VMIC) seeks a declaration of rights concerning its obligations to defend and indemnify Defendant Dale Johnson against a tort claim brought by Defendant Ashley Stone. In the underlying tort suit, Ms. Stone claims that while she was driving on Vermont Route 118, Mr. Johnson negligently operated his 1975 Ford Utility Tractor, causing a collision that injured her. Mr. Johnson and his wife have both auto and homeowners insurance with VMIC. While the parties agree in their motion papers that the auto policy provides no coverage, they disagree on coverage under the homeowners policy. They have filed cross-motions for summary judgment on this question.

This is the rare coverage case in which the court need not concern itself with the rules of policy interpretation. Instead, all agree that the coverage question here depends entirely on whether Vermont law required that Mr. Johnson's tractor be registered prior to any operation on the highway. That question, in turn, depends on whether the tractor qualifies as a "farm tractor" under 23 V.S.A. § 4(68): if it does, Mr. Johnson has insurance; if not, he doesn't.[1] Thus, the question here is one of statutory construction.

The touchstone of statutory interpretation is legislative intent. To gauge this intent, we begin with an evaluation of the plain language of the statute. "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." "As a corollary of this principle, we resort to other tools of statutory construction—such as legislative history—only if the plain language of the statute is unclear or ambiguous." If required to look beyond the plain language, "we must examine and consider fairly, not just isolated sentences or phrases, but the whole and

---

[1] The liability portion of the homeowners policy excludes coverage for bodily injury arising out of the "ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an 'insured.' " Policy Section II—Exclusions § (1)(f)(1). This exclusion does not apply, however, to a "vehicle or conveyance not subject to motor vehicle registration which is: (a) Used to service an 'insured's' residence." Policy Section II—Exclusions § (1)(f)(4). As discussed more fully below, a "farm tractor" is not subject to motor vehicle registration.

every part of the statute, together with other statutes standing *in pari materia* with it, as parts of a unified statutory system."

*Burnett v. Home Improvement Co. of Vermont*, 2024 VT 41, ¶ 9. "That a term may be free from ambiguity when used in one context but of doubtful application in another context is well settled." *Tucker v. Fireman's Fund Ins. Co.*, 517 A.2d 730, 732 (Md. 1986).

Vermont's motor vehicle registration statutes appear at 23 V.S.A. §§ 301–518. Generally applicable definitions appear at 23 V.S.A. § 4. Section 301(b) provides: "Residents . . . shall annually register motor vehicles owned or leased for a period of more than 30 days and operated by them, unless currently registered in Vermont." Subsection (e) further provides: "An individual shall not operate a motor vehicle nor draw a trailer or semi-trailer on any highway unless the vehicle is registered as provided in this chapter." "Farm tractors" are excluded from the definition of "motor vehicle." *See* 23 V.S.A. § 4(21) (" 'Motor vehicle' includes all vehicles propelled or drawn by power other than muscular power, *except farm tractors*, vehicles running only upon stationary rails or tracks, motorized highway building equipment, road making appliances, snowmobiles, tracked vehicles, motor-assisted bicycles, electric bicycles, or electric personal assistive mobility devices." (emphasis added)). "Farm tractor" is expressly defined:

> "Farm tractor" means a traveling power plant or a self-propelled device *that functions as part of crop production, harvesting, feeding, or livestock* management or is used for drawing a farm trailer as defined in subdivision (69) of this section. "Farm tractor" also means a self-propelled vehicle designed to perform single-purpose functions, such as land preparation, crop protection, or harvesting. The term "farm tractor" shall not include a "motor truck" as defined in subdivision (20) of this section.

23 V.S.A. § 4(68) (emphasis added). "Tractor" is separately defined to "include a motor vehicle designed or used primarily as a traveling power plant or for drawing other vehicles, and not so constructed as to carry any load other than a part of the weight of the vehicles and load so drawn, excepting, however, motorized highway building equipment." 23 V.S.A. § 4(39). Tractors other than farm tractors are subject to registration. *See, e.g.,* 23 V.S.A. § 369. "Farm tractors," however, are not subject to registration. Section 370(a) expressly provides: "Notwithstanding any other provisions of law relating to registration fees for motor vehicles or trailers, farm tractors and farm trailers may be operated on the highway without being subject to a registration fee."

There is no dispute that Mr. Johnson's tractor is a "traveling power plant or a self-propelled device" for purposes of 23 V.S.A. § 4(68). The statutory question then would appear to be whether it "functions as part of crop production, harvesting, feeding, or livestock management." VMIC argues that § 4(68) contemplates a professional farmer conducting a fulltime commercial farming operation.

VMIC argues that the definition of farmer at 32 V.S.A. § 3752(7) circumscribes the farming uses described in 23 V.S.A. § 4(68).

Mr. Johnson's uncontested affidavit and deposition testimony establish the character of his uses of the tractor. Mr. Johnson and his wife both have fulltime nonfarm employment. They are not professional farmers and they do not operate a commercial farming enterprise generating significant income. At their residence, Mr. Johnson uses the tractor to tend to a combined total of approximately 3,700 square feet of garden, to prune and harvest apples from 40–50 apple trees, and for activities necessary to the care and maintenance of 40 laying hens and 12 ducks, whose eggs the Johnsons sell to the public. Mr. Johnson also uses the tractor to haul firewood and for incidental home uses, such as plowing, grading, and earth moving. At the time of the collision, Mr. Johnson was towing a truck with "frozen" brakes across the street from his driveway, where he was going to attempt to unfreeze them.

The court begins, as it must, with the plain language of 23 V.S.A. § 4(68). The definition limits the concept of *farm tractor* by the uses to which the conveyance is put: "crop production, harvesting, feeding, or livestock management or is used for drawing a farm trailer." These are not statutorily defined expressions. "Words that are not defined within a statute are given their plain and ordinary meaning, which may be obtained by resorting to dictionary definitions." *Franks v. Town of Essex*, 2013 VT 84, ¶ 8, 194 Vt. 595. Yet one need not resort to a dictionary in this case. The undisputed uses to which Mr. Johnson puts his tractor plainly include the statutory uses at § 4(68). And nothing on the face of the statute says that those must be the sole uses to which the tractor is put, or that a tractor must be used only by a professional farmer conducting a substantial commercial farming operation.

Nothing in the related statutes appears to suggest any ambiguity here. VMIC points to the definition of "tractor"; it argues that "farm tractor" is a subset of "tractor," and there is some ambiguity related to distinguishing whether Mr. Johnson's is one or the other. "Tractor" is defined as "a motor vehicle designed or used primarily as a traveling power plant or for drawing other vehicles, and not so constructed as to carry any load other than a part of the weight of the vehicles and load so drawn, excepting, however, motorized highway building equipment." 23 V.S.A. § 4(39). Assuming without deciding that *farm tractor* is merely a subset of *tractor*, the question nevertheless necessarily turns to the uses to which the asserted farm tractor is put because that is the very distinction between the terms. Here it is clear that the tractor is put to statutory farm tractor uses.

VMIC argues that the definition of farm tractor in Title 23 is limited by the definition of farmer at 32 V.S.A. § 3752(7). No doubt the legislature could have done that, but it did not. Nor is there any other basis for construing these provisions together. Section 3752 is part of the property tax statutes

that apply in the context of Vermont's Agricultural Land and Managed Forestland Use Value Appraisal Program. 32 V.S.A. §§ 3750–3776. Statutes are construed together when they are *in pari materia*. "Statutes are considered to be *in pari materia* when they deal with the same subject matter or have the same objective or purpose." *Bd. of Trustees of Kellogg-Hubbard Libr., Inc. v. Lab. Rels. Bd.*, 162 Vt. 571, 574 (1994); *see also In re Preseault*, 130 Vt. 343, 346 (1972) ("Statutes *in pari materia* are to be construed with reference to each other as parts of one system."). The definition of farmer at 32 V.S.A. § 3752(7) has no bearing on the meaning of farm tractor at 23 V.S.A. § 4(68). If the legislature wanted to connect the concepts, it knew how to do so. *Cf.* 23 V.S.A. § 4(70) (incorporating the definition of farmer at 32 V.S.A. § 3752(7) into the definition of "agricultural custom service vehicle").

To the extent that § 4(68) depends on the broadly stated but undefined uses to which the conveyance is put without including other obvious limits on its breadth, it no doubt operates as an expansive registration exemption. Breadth alone, however, does not demonstrate ambiguity or absurdity. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998) ("As we have said before, the fact that a statute can be 'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.' " (citation omitted)); *Billewicz v. Town of Fair Haven*, 2021 VT 20, ¶ 28, 214 Vt. 511 ("A statute is not absurd simply because it causes an outcome that a . . . litigant believes to be anomalous or perhaps unwise.") (citation and quotation marks omitted). This is not a case where the purported tractor is no tractor at all. Rather, the tractor in this case is exactly what a layperson would think of when considering a tractor used on a farm. Nor is this a case in which a tractor is used for statutory farm purposes but in so minor or infrequent a manner as to exceed the boundaries of what § 4(68) could reasonably be considered to tolerate. There is no dispute that Mr. Johnson's use of the tractor conforms to the statutory uses at least in substantial part. Accordingly, he was permitted to drive it across the highway without registration.

This leaves VMIC's argument as to legislative history. The first answer to this argument is that without some palpable need to resort to legislative history—an identified ambiguity—courts do not go there. *See Est. of Daniels by & through Lyford v. Goss*, 2022 VT 2, ¶ 32, 216 Vt. 161 (no need to consult legislative history when statute is clear). Here, there is no such ambiguity; the legislature's intent is obvious from the words it chose.

In any event, VMIC's argument from legislative history is not persuasive. The argument, briefly summarized, is this. Until 2001, the registration statutes clearly distinguished between farm tractors operated by professional farmers on commercially operated farms (exempt) and all other

tractors including "home" tractors of the sort at issue here (subject to registration). By 2001, a problem had emerged with large manure spreaders damaging highways in Addison County as they traveled from farm to farm. They were operated not by farmers but others providing services to farms. In 2001, House bill 447 emerged. It was, as VMIC characterizes it, an attempt to accommodate everyone's needs, including the towns afflicted with damaged roads. House bill 447 led to the adoption of Act 139 in 2002. Act 139 is where the critical expressions giving rise to the dispute in this case arose. VMIC has submitted extensive evidence of legislative history, including committee testimony, leading up to the adoption of Act 139. Its point is that nowhere in that legislative history is there any indication that the legislature ever intended to do away with the historical, clear distinction between commercial farm tractors exempt from registration and "home" and other tractors subject to it. VMIC would have the court draw the negative inference that because legislators did not clearly say in committee discussions that they intended what the court now takes as the plain meaning of the amended statutes that some substituted meaning should be attributed to those statutes based on past meaning or practice despite their clear language.

This argument stumbles right out of the gate. In 2001, *motor vehicle* was defined as "all vehicles propelled or drawn by power other than muscular power, *except tractors used entirely for work on the farm*, vehicles running only upon stationary rails or tracks, motorized highway building equipment, road making appliances, snowmobiles, all-terrain vehicles or implements of husbandry, or tracked vehicles." 23 V.S.A. § 4(21) (2001) (emphasis added). *Tractor* was defined as "a motor vehicle designed or used primarily as a traveling power plant or for drawing other vehicles, and not so constructed as to carry any load other than a part of the weight of the vehicles and load so drawn, excepting, however, motorized highway building equipment." 23 V.S.A. § 4(39). There were no definitions for *farm tractor* or *tractors used entirely for work on the farm*, much less farm or farmer. Thus, in 2001, exempt tractors were those "used entirely for work on the farm."

In 2001, as to highway usage, § 370 used the expression *farm tractor*, did not define it, and included a specialized definition of *tractor*:

> (a) Notwithstanding any other provisions of law relating to registration fees for motor vehicles or trailers, farm tractors and farm trailers when attached to such tractor and used for transporting agricultural products or agricultural supplies or both or other farm or cooperative farm projects, may be operated on the highway without being subject to a registration fee. When such tractor and trailer are operated as above specified, they shall be considered registered for the purposes of this section and section 371 of this title and all laws relating to the registration of tractors and trailers. Such tractor and trailer shall not be used or operated upon a highway for hire, unless the tractor and trailer are duly registered.

(b) As used in subsection (a) of this section the word "tractor" shall mean and include a regular commercially manufactured tractor and home made tractors commonly called "doodle bugs," used solely as a power plant or for drawing other vehicles, but having no provision for carrying loads and "trailer" shall include "semi-trailer," and farm wagons attached to tractors.

These statutes plainly do not draw a meticulous distinction between a professional farmer operating a commercial farm and someone else engaging in farm-type activities but not necessarily at the same scale or for profit. There may have been a practice or understanding apart from the statutory language, but the distinction on which VMIC's argument stands does not appear in the language of the statutes.

Nor do the committee testimony and legislator comments at hearings in the course of considering what became Act 139 indicate any focus whatsoever on the distinction between a commercial farm/farmer and someone engaging in the same activities on a lesser scale. All the legislative history VMIC produced shows that the legislature was keenly focused on ensuring that any amendments to the registration statutes would not introduce any new burdens on farmers. And the legislation appears to have achieved that goal in part by defining farm tractor at 23 V.S.A. § 4(68) very broadly and relaxing limitations in § 370 as to highway use. VMIC appears to be arguing in favor of exactly the opposite of what the legislature intended. In short, even if § 4(68) were ambiguous, none of the legislative history pointed to by VMIC aids its cause.

Finally, the Vermont cases VMIC has cited provide no support for any of its arguments. Both *Northern Sec. Ins. Co., Inc. v. Rossitto*, 171 Vt. 580 (2000), and *Concord General Mut. Ins. Co. v. Woods*, 175 Vt. 212 (2003), address issues related to the registration of ATVs under different registration statutes inapplicable here. In *Hajdarevic v. Agway Ins. Co.*, 176 Vt. 605 (2004), the Court addresses the terms of a Farmowners Personal Policy that similarly have no application in this case.

## **ORDER**

The court grants VMIC's motion for summary judgment in part and denies in part. It grants Ms. Stone's motion for summary judgment. As agreed by the parties in their motion papers, the auto policy does not provide coverage under the circumstances of this case. The homeowners policy, however, does provide coverage. VMIC has a duty to defend and indemnify Mr. Johnson against the allegations of Ms. Stone's underlying tort suit.

Electronically signed pursuant to V.R.E.F. 9(d): 11/18/2024 3:57 PM

_____
Samuel Hoar, Jr.
Superior Court Judge